Douglas M. Schumacher, State Bar No. 012876
Schumacher Law Firm
16622 Avenue of the Fountains, Ste. 202
Fountain Hills, Arizona  85268
Telephone: 480.315.8807
Facsimile: 480.315.8812
douglas@shoelawaz.com

Attorneys for Plaintiffs Xentx Lubricants, Inc., EMTA Holdings, Inc., and Green Planet Group, Inc.

## UNITED STATES DISTRICT COURT

## DISTRICT COURT OF ARIZONA

| | |
|---|---|
| XENTX LUBRICANTS, INC., an Arkansas Corporation; EMTA Holdings, Inc., a Nevada Corporation; GREEN PLANET GROUP, INC., a Nevada Corporation;<br><br>Plaintiffs,<br><br>vs.<br><br>MICHAEL DYSON and SANDRA DYSON, husband and wife; STEVE LOVEALL; SHADOWFAX PROJECTS, INC., an Illinois corporation;<br><br>Defendants. | Cause No.<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Xentx Lubricants, Inc. ("Xentx Lubricants"), EMTA Holdings, Inc. ("EMTA") and Green Planet Group, Inc. ("Green Planet Group"), by and through its undersigned counsel, and for its Complaint against Defendants Michael Dyson and Sandra Dyson, Steve Loveall, and ShadowFax Projects, Inc. ("ShadowFax"), state and allege, upon information and belief, as follows:

## GENERAL ALLEGATIONS

1. Dyson Properties, Inc. ("Dyson Properties), in 2007, was an Arkansas Corporation with its Principal Place of Business located in Durant, Oklahoma. Dyson Properties did business as Synergyn Oil.  During the time periods alleged in this Complaint, and even after the sale, Sandra Dyson was the Statutory Registered Agent for Dyson Properties.

2. During the relevant times alleged herein, Defendants Michael Dyson and Sandra Dyson were, and are, husband and wife, who are citizens and residents of the State of Oklahoma.

3. On or about July 5, 2007, Plaintiff EMTA Holdings, Inc. purchased Dyson Properties from Sandra Dyson, with an effective date of January 1, 2007, who was represented to be the 100% owner of the stock of Dyson Properties, and such sale was represented to include all tangible and intangible assets of Dyson Properties, which did business as Synergyn Oil and had manufactured and sold, and was manufacturing and selling specific lubricants and oils for a number of years at the time of the sale and purchase of Dyson Properties by EMTA ("Products"). [These Products are itemized in the list which is set forth as Exhibit No. 1]. The purchase of Dyson Properties was represented to include, among other things, the purchase and ownership of the *trade name* Synergyn, *trade marks* and *trade dress* associated with the manufacture and sale of the lubricants and oils identified in Exhibit No. 1. [See documents entered into relative to such purchase of stock of Dyson Properties set forth as Exhibit No. 2].

4. Plaintiff EMTA Holdings, Inc. ("EMTA") was a Nevada corporation with its Principle Place of Business located at 1626 West 12th Place, Tempe, Arizona, during the relevant times alleged in this Complaint.   In 2009, EMTA Holdings, Inc. changed its name to Green Planet Group, Inc., a Nevada Corporation also with its Principle Place of Business located at 1626 West 12th Place, Tempe, Arizona.

5. On or about July 5, 2007, Plaintiffs entered into an express written Employment Agreement with Michael Dyson. [A copy of this written contract, hereinafter referred to as "Employment Agreement" is set forth as Exhibit 3 to this Complaint]. The Employment Agreement, *inter alia*, contained  obligations and covenants which precluded Michael Dyson from competing with the Company, specific prohibitions on Michael Dyson's ability to solicit and/or accept orders for business from customers of Company, duties relative to confidentiality and

devotion of his full-time efforts to the business and affairs of the Company, prohibitions from engaging in embezzlement, theft or misappropriation of Company's property or business opportunity, and prohibitions from using the trade names, trademarks or trade dress of the Company and of present and future subsidiaries and affiliates of Dyson Properties.

6. The *Covenant Not to Compete* with Company and its subsidiaries and affiliates applied during Michael Dyson's employment, and for the two years after Michael Dyson's termination from employment with Company, and was applicable in all states in which Company conducted business ("Territory").

7. Michael Dyson was terminated by Company on January 31, 2014.

8. On August 21, 2008, Dyson Properties, Inc.'s name was changed to Xentx Lubricants, Inc. ("Xentx Lubricants"), an Arkansas Corporation, with its current Principal Place of Business located at 1626 West 12th Place, Tempe, Arizona. 85281. Xentx Lubricants does business as Synergyn which company markets, sells and distributes various Synergyn and Xentx lubricants and oils throughout the United States, including but not limited to the State of Arizona including, but not limited to the Products which are itemized in the list which is set forth as Exhibit No. 1]. Xentx Lubricants markets and distributes its products from Arizona and California to customers throughout the United States.

9. The owner and long time user of the trade name Synergyn and the various trademarks and trade dresses associated with the Synergyn lubricants and oils is EMTA Holdings which is now known as Green Planet Group, and Xentx Lubricants and its predecessor entity Dyson Properties. Synergyn lubricants and oils are marketed, sold and delivered by Xentx Lubricants in all 50 States within the United States of America.

10. During the time periods alleged in this Complaint, upon information and belief, Defendant Michael Dyson, individually and/or by and through and in concert with his agents, employees and/or others, engaged in at least the following wrongful and willful conduct which has resulted, and will likely continue to result in consumer confusion:

    A. The use of the name and logo for Synergyn;

    B. The use of Xentx Lubricant's UPC symbol;

    C. The use of the same and/or deceptively similar packaging and labeling to that which was purchased by, and is now owned and used by Plaintiffs;

    D. The disclosure of Confidential Information to third parties not the Company;

    E. Use of Xentx Lubricant's formula and MSDS sheets for its products;

    F. The conversion and use of Xentx Lubricant's 1.800 number and redirecting of calls from Xentx Lubricants to Michael Dyson;

    G. The solicitation of Xentx' customers and sale of Products to Xentx Lubricant's customers directly, and through Xentx' customer lists and from QuickBooks data files which were owned and are licensed and owned by Xentx Lubricants;

    H. By profiting from manufacturing, distributing and/or selling deceptively similar products under at least the business name of ShadowFax;

    I. The failure to devote his full-time efforts to the business and affairs of the Company by establishing a pawn shop business during his employment with Company; and

    J. The theft, embezzlement and/or misappropriation of Company property, including but not limited to the unauthorized use of Plaintiffs' Quickbook's license and customer lists, and the unauthorized transfer of Company property and assets to a third party without compensation to Company. [See Work

Order from Cystal Clean, dated February 13, 2014, set forth as Exhibit No. 4].

11. Upon further information and belief, Defendant Michael Dyson also *acted in concert* with Defendant Steve Loveall, who is believed to be the owner of ShawFax, to manufacture, market and distribute and sell Synergyn lubricant's and oils. Consequently, Defendants Steve Loveall and ShadowFax should be held jointly and severally liable for the their acts and conduct as well as for the concerted acts, conduct and omissions of and with Defendant Michael Dyson as alleged herein. Defendant Steve Loveall is a resident and Citizen of the State of Illinois. Defendant ShadowFax is an Illinois corporation with its Principal Place of Business located at 18 Bradford Hills, Sullivan, Illinois, which also maintains an office in Durant, Oklahoma.

12. This action arises out of the breach of the express and/or implied contractual agreements entered into between Plaintiffs and Defendants Dyson, together with breaches of common law and statutory duties of care, which have caused damages and/or irreparable harm to Plaintiffs.

13. The amount in controversy exceeds the jurisdictional minimum of this Court in that the amount in controversy, not including interest, costs and attorney's fees, exceeds the principle sum of $75,000.00.

14. This Court has Subject Matter Jurisdiction over this matter and over the parties to this action in that the parties to this lawsuit are Citizens of different states and the amount in controversy exceeds the principal sum of $75,000.00, thus providing for Diversity of Citizenship Jurisdiction pursuant to 28 U.S.C. § 1332 (a)(1), Federal Question Jurisdiction pursuant to 28 U.S.C. § 1331 and § 1338 (a) and (b), and pursuant to the principles of supplemental jurisdiction under 28 U.S.C. § 1367.

15. This Court has Personal Jurisdiction over this matter and the parties to this dispute have agreed in writing that: *"The parties hereto hereby submit to the exclusive jurisdiction of the United States Federal Courts located in Phoenix, Arizona with respect to any dispute arising under this warrant, the agreements entered into in connection herewith or the transactions contemplated hereby or thereby"*. Furthermore, Defendants Michael Dyson, Sandra Dyson and/or Steve Loveall have engaged in conduct, breaches and/or omissions which have damaged and/or adversely affected the business and property interests of Plaintiffs located within the State of Arizona. [See documents entered into relative to such purchase of Dyson Properties set forth as Exhibit No. 2].

16. Venue is proper in Phoenix, Arizona in accordance with 28 U.S.C. 1391, as a substantial part of the breaches, events, damages and/or the results of Defendants' acts, conduct and/or omissions caused and/or were intended to and/or reasonably anticipated to cause damages and/or irreparable harm to Plaintiffs who are located in Tempe, Arizona, and the property claimed to be owned and interfered with by Defendants is owned by a company with its Principal Place of Business located in Arizona. Moreover, Plaintiffs and Defendants Dyson have expressly agreed that the District Court of Arizona would be the appropriate Venue.

17. Plaintiffs, and each of them, as a result of Defendants' acts, conduct and/or omissions as alleged in this Complaint, and which may be further revealed during discovery and/or disclosure, seek damages in amount in excess of $75,000.00 and/or injunctive relief.

## FIRST CAUSE OF ACTION
### Breach of Contract

18. Plaintiffs incorporate by reference the allegations of Paragraphs 1 through 17 of this Complaint as though fully set forth herein.

19. On or about July 5, 2007, Plaintiff Dyson Properties and EMTA Holdings ("Company") entered into an express written Employment Agreement with Michael Dyson. [A copy of this written contract, hereinafter referred to as "Contract" is set forth as Exhibit 3 to this Complaint].

20. The Agreement, *inter alia*, required Michael Dyson to comply with the following contractual duties and obligations during his employment and for at least two years following termination of employment:

A. Dyson shall not: *become an officer, director, more than 2% stockholder, partner, associate, employee, owner, proprietor, agent, creditor, independent contractor, co-venturer of otherwise, or be interested in or associated with any other corporation, firm or business engaged in the Territory in the same or similar business competitive with the Company (including the Company's present or future subsidiaries and affiliates) as such business shall exist on the day hereof and during the Employment Period*;

B. Dyson shall not: *solicit, cause or authorize, directly or indirectly, to be solicited on behalf of himself or third parties from parties who were customers of the Company* (including *the Company's present or future subsidiaries and affiliates)at any time during the Employment Period, any business similar to the business transacted by the Company with such customer;*

C. Dyson shall not: *accept or cause or authorize, directly or indirectly, to be accepted for or on behalf of himself or third parties, business from any such customers of the Company (including the Company's present or future subsidiaries and affiliates)that is similar to the business transacted by the Company with such customer;*

D. Dyson shall not: *use the tradenames, trademarks, or trade dress of any of the products of the Company (including the Company's present or future subsidiaries and affiliates); or any substantially similar tradename, trademark or trade dress likely to cause, or having the effect of causing confusion in the minds of*

*manufacturers, customers, suppliers and retail outlets and the public generally.*

   E.  Dyson shall not engage in *"theft, embezzlement, misappropriation of or intentional and malicious infliction of damage to the Company's property or business opportunity."*

   F.  Dyson *"shall devote his full-time efforts to the business and affairs of the Company and use his best efforts to carry out such responsibilities faithfully and efficiently."*

   G.  Dyson *"shall not . . . disclose or use (except for the direct benefit of the Company) any "confidential information" he may learn or has learned by reason of his association with any Relevant Entity."*

  21.  *Dyson agreed that damages resulting from a breach of the Covenant Not to Compete may be difficult to calculate and insufficient to remedy the injury resulting from such breach, particularly with respect to any ongoing or prospective breach. Accordingly, the Company shall be entitled, in addition to any other right and remedy it may have at law or in equity, to a preliminary and permanent injunction, without the posting of any bond or other security, enjoining or restraining Employee, as the case may be, from any violation or threatened violation of this Covenant Not to Compete.*

  22.  The Agreement with Dyson also provided that*: Nothing contained in this Section shall be construed as prohibiting the Company from pursuing any other remedies available to it for any such breach or threatened breach, including recovery of damages and an equitable accounting of all earnings, profits and other benefits arising from such violation.*

  23.  Defendant Michael Dyson breached the Contract and his duties and obligations by doing at least the following:

   A.  The use of the name and logo for Synergyn;

   B.  The use of Xentx Lubricant's UPC symbol;

   C.  The use of the same and/or deceptively similar packaging and

labeling to that which was purchased by, and is now owned and used by Plaintiffs;

D. The disclosure of Confidential Information to third parties not the Company;

E. Use of Xentx Lubricant's formula and MSDS sheets for its products;

F. The conversion and use of Xentx Lubricant's 1.800 number and redirecting of calls from Xentx Lubricants to Michael Dyson;

G. The solicitation of Xentx' customers and sale of Products to Xentx Lubricant's customers directly, and through Xentx' customer lists and from QuickBooks data files which were owned and are licensed and owned by Xentx Lubricants;

H. By profiting from manufacturing, distributing and/or selling deceptively similar products under at least the business name of ShadowFax;

I. The failure to devote his full-time efforts to the business and affairs of the Company by establishing a pawn shop business during his employment with Company; and

J. The theft, embezzlement and/or misappropriation of Company property, including but not limited to the unauthorized use of Plaintiffs' Quickbook's license and customer lists, and the unauthorized transfer of Company property and assets to a third party without compensation to Company. [See Work Order from Cystal Clean, dated February 13, 2014, set forth as Exhibit No. 4].

24. The breaches of the Contract by Defendant Michael Dyson have caused direct and consequential damages and irreparable harm to Plaintiffs in an amount to be proven at trial.

## SECOND CAUSE OF ACTION

### Breach of Duty of Good Faith & Fair Dealing

25. Plaintiffs incorporate by reference the allegations of Paragraphs 1 through 24 of this Complaint as though fully set forth herein.

26. A party to a contract is under an implied duty to act fairly and in good faith. This duty is implied by law, and is not required to be set forth in writing.

27. The duty of good faith and fair dealing requires that neither party to the Contract do anything that prevents the other party from reaching the benefits of their agreement.

28. The Contract entered into between Dyson Properties and Michael Dyson also implied required that Defendant Michael Dyson not do anything that prevented Dyson Properties and/or its affiliates and/or subsidiaries from reaching the benefits of the Contract.

29. Defendant Michael Dyson breached his duty of good faith and fair dealing when he did or failed to do the following:

    A. The use of the name and logo for Synergyn;

    B. The use of Xentx Lubricant's UPC symbol;

    C. The use of the same and/or deceptively similar packaging and labeling to that which was purchased by, and is now owned and used by Plaintiffs;

    D. The disclosure of Confidential Information to third parties not the Company;

    E. Use of Xentx Lubricant's formula and MSDS sheets for its products;

    F. The conversion and use of Xentx Lubricant's 1.800 number and redirecting of calls from Xentx Lubricants to Michael Dyson;

    G. The solicitation of Xentx' customers and sale of Products to Xentx Lubricant's customers directly, and through Xentx' customer lists and from QuickBooks data files which were owned and are licensed and owned by Xentx

1  Lubricants;

2          H.  By profiting from manufacturing, distributing and/or selling
3  deceptively similar products under at least the business name of ShadowFax;

4          I.  The failure to devote his full-time efforts to the business and affairs
5  of the Company by establishing a pawn shop business during his employment with
6  Company; and

7          J.  The theft, embezzlement and/or misappropriation of Company
8  property, including but not limited to the unauthorized use of Plaintiffs'
9  Quickbook's license and customer lists, and the unauthorized transfer of Company
10 property and assets to a third party without compensation to Company. [See Work
11 Order from Cystal Clean, dated February 13, 2014, set forth as Exhibit No. 4].

12     30.  The breaches of the implied duty of good faith and fair dealing by
13 Defendant Michael Dyson have caused damages and harm to Plaintiffs in an
14 amount to be proven at trial.

## THIRD CAUSE OF ACTION

### Interference with Contract and/or Business Expectancy

17     31.  Plaintiffs incorporate by reference the allegations of Paragraphs 1
18 through 30 of this Complaint as though fully set forth herein.

19     30.  During the relevant time periods alleged in this Complaint, Plaintiff
20 Xentx Lubricants had, and continue to have, a contractual and/or business
21 expectancy with third parties, including customers who purchase its Products,
22 including Synergyn lubricants and oils.

23     31.  During the relevant time periods alleged in the Complaint, Plaintiff
24 Xentx Lubricants also had, and continues to have, a contractual expectation with
25 Defendant Michael Dyson as set forth in Plaintiffs First Cause of Action, which
26 Defendant Steve Loveall and ShadowFax knew or should have known of such
27 contractual relationship.

28

32. During the time periods alleged in Plaintiffs' Complaint, Defendants Michael Dyson, Steve Loveall and ShadowFax have engaged, and continue to engage, in the following wrongful interference with Plaintiffs' contractual and business expectancies:

    A. The use of the name and logo for Synergyn;

    B. The use of Xentx Lubricant's UPC symbol;

    C. The use of the same and/or deceptively similar packaging and labeling to that which was purchased by, and is now owned and used by Plaintiffs;

    D. The disclosure of Confidential Information to third parties not the Company;

    E. Use of Xentx Lubricant's formula and MSDS sheets for its products;

    F. The conversion and use of Xentx Lubricant's 1.800 number and redirecting of calls from Xentx Lubricants to Michael Dyson;

    G. The solicitation of Xentx' customers and sale of Products to Xentx Lubricant's customers directly, and through Xentx' customer lists and from QuickBooks data files which were owned and are licensed and owned by Xentx Lubricants;

    H. By profiting from manufacturing, distributing and/or selling deceptively similar products under at least the business name of ShadowFax;

    I. The failure to devote his full-time efforts to the business and affairs of the Company by establishing a pawn shop business during his employment with Company; and

    J. The theft, embezzlement and/or misappropriation of Company property, including but not limited to the unauthorized use of Plaintiffs' Quickbook's license and customer lists, and the unauthorized transfer of Company property and assets to a third party without compensation to Company. [See Work Order from Cystal Clean, dated February 13, 2014, set forth as Exhibit No. 4].

33. The wrongful interference by Defendants Michael Dyson, Steve Loveall and ShadowFax with the contracts and/or business expectancy of Plaintiffs have caused damages and harm to Plaintiffs in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION
### Unfair Competition

34. Plaintiffs incorporate by reference the allegations of Paragraphs 1 through 33 of this Complaint as though fully set forth herein.

35. Plaintiffs are the owner and user of the Trade Name and Trade Mark known as "Synergyn" together with other markings and packaging used in the ordinary course of Plaintiffs' business.

36. Sandra Dyson sold any right and/or interest in the Trade Name and Trade Mark known as "Synergyn" when she sold 100% of her interest in Dyson Properties, Inc. to EMTA in July of 2007. Prior to the sale of Dyson Properties to EMTA, Dyson Properties did business as Synergyn Oil and manufactured, marketed and sold those Products which are identified in Exhibit No. 1, which Xentx Lubricants continued to market and sell the Products following the purchase and sale of Dyson Properties.

37. Xentx Lubricants received and reasonably expected to receive customers in its business within the territory in which it conducts business through the use and marketing of the name "Synergyn" together with other words, marks, names, symbols and other devices used by Plaintiffs Xentx Lubricants to identify and distinguish goods made and sold by Plaintiffs from goods made and sold by others.

38. Defendant Michael Dyson, Steve Loveall and ShadowFax have wrongfully used the Trade Name of Synergyn and other misleading labeling, markings, packaging and marketing devices and methods to "palm off" or "pass off" by engaging in false representations so as to induce buyers to believe that Defendants' product is that of the Plaintiffs.

39. As a result of Defendants Michael Dyson's, Steve Loveall's and ShadowFax' wrongful interference with the Trade Name and Trade Mark of "Synergyn" as well as Plaintiff's products in general, Plaintiffs seek damages in amount to be proven at trial.

40. Plaintiffs also seek injunctive relief to prevent Defendants Michael Dyson, Steve Loveall and ShadowFax, including its employees, agents and/or others under the direction and/or control, from using Plaintiff's Trade Mark and Trade Name and/or any deceptively similar name and/or marketing efforts in the future.

## FIFTH CAUSE OF ACTION

### Unlawful Trade Practices -- A.R.S. 44-1441, et. seq.

41. Plaintiffs incorporate by reference the allegations of Paragraphs 1 through 40 of this Complaint as though fully set forth herein.

42. The act, use or employment by and person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission or any material fact with the intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been mislead, deceived or damaged thereby, is declared to be an unlawful practice.

43. A Trademark means any word, name, symbol or device or any combination of these items that is adopted and used by a person to identify goods made or sold by that person and to distinguish the goods from goods made or sold by others.

44. Plaintiffs are the owner and user of the Trade Name and Trade Mark known as "Synergyn" together with other Marks, as defined above, which were and are used in the ordinary course of Plaintiffs' business.

45. The owner of a mark registered under this article may proceed by civil action against any person who, without the consent of the registrant:

A.  Uses in this state the registered mark or a mark similar to the registered mark on or in connection with any goods or services or any container for goods in any manner that is likely to cause confusion, cause a mistake or deceive a person as to either:

(I)  The affiliation, connection or association of the person with another person.

(II)  The origin, sponsorship or approval of the goods, services or commercial activities by the owner of the registered mark; and/or

B.  Reproduces, counterfeits, copies or colorably imitates a registered mark in any manner whatsoever if such reproductions, counterfeits, copies or colorable imitations are for usage in contravention of paragraph 1.

46.  Defendants Michael Dyson, Steve Loveall and ShadowFax have used the Trade Name and Trade Mark of Synergyn together other misleading labeling, packaging and marketing devices and methods with the intent that others, including but not limited to customers of Plaintiffs, rely on such concealment, suppression or omission, in connection with the sale or advertisement of merchandise.  [For example, please see photographs of Plaintiff's product packaging and labeling compared to the packaging and labeling utilized by Defendants, along with invoice sent by Defendant ShadowFax, set forth as Exhibit No. 5].

47.  In accordance with A.R.S. § 44-1451, the court may, and Plaintiffs seek that the court:

A.  Grant injunctions to restrain any of such acts as the court deems just and reasonable.

B.  Order the Defendants to pay/reimburse Defendants' profits to Plaintiffs, together with any damages sustained by Plaintiffs.

## SIXTH CAUSE OF ACTION
## VIOLATION OF LANHAM ACT

48.  Plaintiffs incorporate by reference the allegations of Paragraphs 1 through 47 of this Complaint as though fully set forth herein.

49.  Defendants' unauthorized use in commerce of the Infringing Mark as described here is likely to cause confusion, mistake or deception and constitutes trademark infringement in violation of Section 32 (1) of the Lanham Act, 15 U.S.C. § 1114 (1).

50.  Upon information and belief, Defendants have committed the foregoing alleged acts of infringement with full knowledge of Plaintiffs' prior rights in the trade mark with the willful intent to cause confusion and trade on Plaintiffs' goodwill.

51. Defendants' conduct is causing immediate and irreparable harm and injury to Plaintiffs, and to its goodwill and reputation, and will continue to both damage Plaintiffs and confuse the public unless enjoined by this court.  Plaintiffs have no adequate remedy at law.

52.  Plaintiffs are entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorney's fees and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. § 1116, § 1117, together with prejudgment and post-judgment interest.

## SEVENTH CAUSE OF ACTION
## AIDING & ABETTING

53.  Plaintiffs incorporate by reference the allegations of Paragraphs 1 through 52 of this Complaint as though fully set forth herein.

54.  Defendant Michael Dyson engaged in conduct for which is liable to Plaintiffs.

55. Defendants Steve Loveall and ShadowFax, by and through its employee [s] and/or agent [s], were aware that Michael Dyson was going to engage in such conduct.

56. Defendants Steve Loveall and ShadowFax, by and through its employee [s] and/or agent [s], provided substantial assistance or encouragement to Michael Dyson with the intent of promoting the conduct.

57  As a result of Defendants Steve Loveall's and ShadowFax' aiding and abetting Defendant Michael Dyson with his wrongful conduct, Plaintiffs seek damages in amount to be proven at trial.

58. Plaintiffs also seek injunctive relief to prevent Defendants Steve Loveall and ShadowFax, including its employees, agents and/or others under the direction and/or control, from using Plaintiff's Trade Mark and Trade Name and/or any deceptively similar name and/or marketing efforts in the future.

## EIGTH CAUSE OF ACTION

## NEGLIGENCE, REIMBURSEMENT & INDEMNITY

59  Plaintiffs incorporate by reference the allegations of Paragraphs 1 through 58 of this Complaint as though fully set forth herein.

60. Defendant Sandra Dyson, as the Statutory Registered Agent for Xentx Lubricant, Inc. had a duty to receive and timely communicate the receipt of legal papers served upon her to the principle of Xentx Lubricants, Inc.

61.  Landmark Bank filed its lawsuit naming Michael and Sandra Dyson, and Xentx Lubricants, Inc., which sought, *inter alia*, monetary damages.

62. Sandra Dyson, in her capacity as Statutory Agent for Xentx Lubricants, Inc. was served with Landmark's Complaint on February 18, 2014.  [See Affidavit of Service upon Sandra Dyson, set forth as Exhibit No. 6].  Sandra Dyson, as Statutory Agent, did not timely notify, nor did she send notice of the Summons and Complaint filed by Landmark to the owner and principal of Xentx Lubricants, Inc.

63. Landmark Bank therefore obtained a Default Judgment against Dyson Xentx Lubricants, Inc. by virtue of Landmark's service of the Complaint upon Sandra Dyson in her capacity as Statutory Agent. [See Journal Entry of Judgment and Order, set forth as Exhibit No. 7].

64. Landmark Bank, by virtue of its Default Judgment against Dyson Properties, Inc. has taken, and will likely continue to, take action to recover monies from Dyson Properties, Inc. [See correspondence from Landmark's counsel, set forth as Exhibit No. 8].

65. The Default Judgment was obtained against Xentx Lubricants, Inc. because its Statutory Agent, Sandra Dyson, was negligent in not complying with her statutory duty of care; and as such, she was negligent *per se* in causing Plaintiff's damages in having to defend and potentially satisfy the Judgment caused by the negligence of Defendant Sandra Dyson.

66. Plaintiff Xentx Lubricants, Inc. therefore seeks damages caused by the negligence of Sandra Dyson, and for a declaratory finding that Sandra Dyson is legally obligated to reimburse and indemnify Xentx Lubricants, Inc. for any monies which Plaintiff has paid and/or has to pay to defend and/or indemnify Xentx Lubricants, Inc. relative to satisfaction of the Judgment.

## **ATTORNEY'S FEES & COSTS**

67. Plaintiffs incorporate by reference the allegations of Paragraphs 1 through 66 of this Complaint as though fully set forth herein.

68. Plaintiffs were required to hire an attorney to protect and advance its legal and business interests, in part because Defendants failed to comply, much less respond, with and to Plaintiffs' written demand that they "Cease and Desist" from engaging in the conduct alleged in this Complaint. [See correspondence to Defendants, set forth as Exhibit No. 6].

69. This dispute "arises out of contract" as defined by A.R.S. § 12-341.01. As such, pursuant to Arizona law, including any statutory authorization for an

award of attorney's fees under Federal and/or State law, and the agreements entered into between the parties, if it is the successful party, Plaintiffs seek an award of its reasonable attorney's fees.

70. Plaintiffs, if they are the successful party [ies], are also entitled to an award of its taxable costs.

## PRE-JUDGMENT INTEREST

71. Plaintiffs incorporate by reference the allegations of Paragraphs 1 through 70 of this Complaint as though fully set forth herein.

72. Some of the amounts sought against Defendants are or will be *liquidated* as defined by law.

73. Plaintiffs therefore seek an award of pre-judgment interest at the highest legal rate on such *liquidated damages*.

## DEMAND FOR JURY TRIAL

74. Plaintiffs incorporate by reference the allegations of Paragraphs 1 through 73 of this Complaint as though fully set forth herein.

75. Plaintiffs, in accordance with Rule 38, *Federal Rules of Civil Procedure*, request a jury trial on all issues which are triable as a matter of right to a jury.

WHEREFORE, Plaintiffs pray for judgment against Defendants Mike Dyson, Sandra Dyson, Steve Loveall, and ShadowFax, jointly and severally, and as set forth below:

1. For monetary damages in an amount to be proven at trial, but in at least the amount of $75,000.00 and in whatever amounts is proven by the evidence.

2. For injunctive and equitable relief to prevent Defendants, their employees, agents, and/or any other person and/or any entity acting under their direction and/or in concert with them from using and/or interfering with Plaintiffs' ownership and/or use of the trade name, trade markings and trade dress and/or the sale of the products known as Synergyn lubricants and oils.

3. For an Order which declares that Defendant Sandra is obligated to defend, reimburse and indemnify Xentx Lubricants, Inc. for the Judgment entered in favor of Landmark Bank.

4. For pre-judgment and post-judgment interest thereon at the statutory rate;

5. For attorneys' fees and taxable costs of suit, if authorized by Arizona and/or Federal law and supported by the facts; and

6. For such other relief as the Court deems just and proper.

DATED this 31st day of July, 2015.
DOUGLAS M. SCHUMACHER, P.C.

s/Douglas M. Schumacher, Esq.
Douglas M. Schumacher, Esq.
16622 East. Avenue of the Fountains, Ste. 202
Fountain Hills, Arizona 85268
Attorneys for Plaintiffs Xentx Lubricants, Inc., EMTA Holdings, Inc., and Green Planet Group, Inc.